UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KETEVAN (KETI) CHICHINADZE,

                Plaintiff,

    v.

                                      18 CV 8069 (KPF)

BG BAR d/b/a MEHANATA BULGARIAN BAR,
ALEXANDER DIMITROV and TANIA
DIMCHEVA,

                Defendants.

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

**JOSEPH & KIRSCHENBAUM LLP**

D. Maimon Kirschenbaum
Josef Nussbaum
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640 May 24, 2019

June 19, 2020

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................... 1

II.  ARGUMENT ....................................................................................................................... 3

   A.  The Court Should Strike Defendant Dimitrov's Declaration ............................................. 3

     1)  Defendants' Local Rule 56.1 Counter-Statement and Declaration Were Filed After the Deadline ........................................................................................................................ 3

     2)  The Court Should Disregard Defendants' Sham Declaration ......................................... 4

   B.  Plaintiff is Entitled to NYLL Liquidated Damages on her Minimum Wage Claims ......... 8

   C.  Defendants do not Oppose Plaintiff's Motion for Summary Judgment on her NYLL § 195 Notice Claims ............................................................................................................. 9

III. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Bloom v. Rock*, 2010 U.S. Dist. LEXIS 53995 (S.D.N.Y. 2010)…………………………3

*Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248 (2d Cir. 1997)……………..3

*Chiaramonte v. Animal Med. Ctr.*, 2016 U.S. Dist. LEXIS 8024
   (S.D.N.Y. Jan. 7, 2016)……………………………………………………………………7

*Copantitla* v. *Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253 (S.D.N.Y. 2011))………..…9

*Dudley v. Hanzon Homecare Servs.*, 2018 U.S. Dist. LEXIS 8112
   (S.D.N.Y. 2018)……………......……………………………………………………………9

*Garcia v. JonJon Deli Grocery Corp.*, 2015 U.S. Dist. LEXIS 108264
   (S.D.N.Y. 2015)………………………………………………………………………...9

*Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614 (2d Cir. 1996)…………………………...…5

*In re Johns-Manville Corp.*, 2006 U.S. Dist. LEXIS 40176 (S.D.N.Y. June 13, 2006)…..3

*Jackson v. Fed. Express*, 766 F.2d 189 (2d Cir. 2014)…………………………………8

*Memory Ten, Inc. v. Silicon Mt. Holdings*, 92 F. Supp.3d 176 (S.D.N.Y. 2015)…………8

*Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969)………………..5

*Pineda v. Frisolino, Inc.*, 2017 U.S. Dist. LEXIS 139735 (S.D.N.Y. Aug. 29, 2017)…..10

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015)……………10

*Xiao Dong Fu v. Red Rose Nail Salon Inc.*, 2018 U.S. Dist. LEXIS 49514
   (S.D.N.Y. Mar. 26, 2018)…………………………………………..……………………..8

## Statutes

Fed. R. Civ. P., Rule 6……………………………………………………………....3
N.Y. Lab. Law § 195……………………………………………………………9, 10
N.Y. Lab. Law § 198………………………………………………………………....8

## I.    INTRODUCTION[1]

As set forth in Plaintiffs' original moving papers, partial summary judgment on Plaintiff's minimum wage claims is appropriate as there are no genuine factual disputes that Defendants never paid Plaintiff the full minimum wage.  Plaintiff's claim is simple and straightforward:  The Parties agree that there are a minimum number of hours that Plaintiff worked for Defendants as a bartender from each year from 2014 until 2018.  In discovery, Defendant Dimitrov—testifying on his own behalf and as a witness for the corporate Defendant— testified multiple times that he paid Plaintiff her tips as well as $3.00 or $3.50 as an hourly wage.  These amounts were at all times well below the statutorily mandated minimum wages.  Accordingly, Defendants simply cannot escape liability for the "minimum" number of hours that the Parties agree Plaintiff worked.

Now, for the first time in opposition to summary judgment, Defendant Dimitrov attempts to undo his unambiguous deposition testimony and claim that he supplemented Plaintiff's pay with undocumented cash payments that raised Plaintiff's hourly wage up to the full minimum wage.  As set forth below, these statements—filed after the twice-extended Court Ordered deadline—are obvious fabrications designed to manufacture factual disputes where no such disputes exist.  As these statements obviously contradict Defendants' earlier testimony (and they are improperly proffered for the first time on summary judgment), they should be ignored.

Defendants' obvious misrepresentations are especially alarming in light of the fact that their reliance on this new, unsupported "evidence" is precisely what the Court cautioned them to not do in defending this motion.  Specifically, at the premotion Conference in advance of this motion being filed, the Court pressured Defendants' counsel to explain how his client intended to

---

[1]   In support of this memorandum, Plaintiff submits the June 19,, 2020 Declaration of Josef Nussbaum together with Exhibits annexed thereto (cited as "Ex. __").

defend the motion.  As it became exceedingly clear that Defendants had no plan, the Court raised

its concerns with Defendants' position and the evidently frivolous and wasteful defense they

seemed prepared to engage in. Specifically, before setting a briefing schedule, the Court

instructed Defendants' counsel as follows:

> […] I am asking you to go back to your client and to communicate that I have
> grave concerns about his ability to defend this particular motion, given what's in
> the deposition transcript that's been shown to me, and, separately, that in such a
> setting, he is getting dangerously near the point where one could impose sanctions
> on him under Rule 11 of the Federal Rules of Civil Procedure or under my
> inherent powers because of a frivolous defense. **And I'd be very, very concerned
> if his defense were somehow factually at odds with what has been said in the
> deposition**.

Nussbaum Decl., Ex. A at pg. 14 (emphasis added).  To Plaintiff's astonishment, Defendants

shamelessly ignored this admonition and submitted a declaration that is directly at odds with

their deposition testimony.  Given Defendants' direct disregard of the Court's explicit warnings,

as well as the settled law in this Circuit relating to submitting new and contradictory evidence on

summary judgment, the Court should strike Defendant Dimitrov's declaration from the record

and grant summary judgment on Plaintiff's minimum wage claims.

The Court should also award Plaintiff liquidated damages on her minimum wage claims.

In their opposition, Defendants bizarrely rely on the New York Labor Law's ("NYLL") old

standard—repealed more than a decade ago—whereby the burden was on the employee, not the

employer, to prove that the violation was "willful."  However, as the applicable standard requires

the employer to prove a "good faith basis" for the violation and Defendants do not highlight any

steps they had taken—other than relying on the ADP payroll company—summary judgment

should be granted to Plaintiff on this issue.

Finally, Defendants do not offer any defense to Plaintiff's claims that she never received proper wage statements and wage notices as required by the New York's Wage Prevention Act ("WTPA") and thus summary judgment should be granted on those claims as well.

## II.   ARGUMENT

### A.  The Court Should Strike Defendant Dimitrov's Declaration

#### 1)  Defendants' Local Rule 56.1 Counter-Statement and Declaration Were Filed After the Deadline

Despite the Court granting Defendants multiple extensions to the briefing schedule and even after the Court warned counsel for Defendants that "he should not contemplate any further extensions," Defendants still filed documents in support of their opposition after the Court Ordered deadline. *Compare Dkt. no. 47 with nos*. 49-50. These documents include Defendants' Local Rule 56.1 Counter-Statement ("Defs.' 56.1") and a Declaration of Alexander Dimitrov in support of their opposition.  Given this flagrant disregard to the Court's briefing schedule, these untimely-filed documents should be stricken from the record.

Fed. R. Civ. P. 6(b)(1)(B) "provides that courts may accept late filings from a party 'on motion made after the time has expired if the party failed to act because of excusable neglect.'" *Bloom v. Rock*, 2010 U.S. Dist. LEXIS 53995, at *33 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 6(b)(1)(B)).  The Second Circuit has "taken a hard line" in "addressing when neglect is 'excusable,'" *id.* at 368, and has "strictly limited what attorney error [can] be considered excusable neglect." *In re Johns-Manville Corp*., 2006 U.S. Dist. LEXIS 40176, at *7 (S.D.N.Y. June 13, 2006 (collecting cases), *aff'd*, 476 F.3d 118 (2d Cir. 2007). "[F]ailure to follow the clear dictates of a court rule will generally not constitute . . . excusable neglect." *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997) (internal quotation marks omitted).

Here, Defendants' opposition papers were originally due by May 15, 2020. *See* Dkt.

Entry for 2/24/2020.  Defendants later sought and were granted an additional week, until May

22, 2020, to file their opposition. Dkt. No. 45.  Defendants did not file their opposition papers or

seek any relief from the Court by the new deadline and, on May 26, 2020, *i.e.*, after the filing

deadline had already passed, they sought an additional two weeks to file their opposition papers.

Dkt No. 46. The Court granted this request and allowed Defendants until June 5, 2020 to file

their opposition. Dkt. No. 47.  The Court also cautioned that counsel for Defendants "should not

contemplate any further extensions." *Id*.  Defendants filed a memorandum of law in opposition to

Plaintiff's motion by the opposition deadline, dkt. no. 48, however, they did not file a Local Rule

56.1 Counter-Statement or any other supporting documents.  Apparently permitting themselves

the liberty of another extension without seeking permission from or even notifying the Court,

Defendants filed a Local Rule 56.1 Counter-Statement and declaration four days after the filing

deadline.  Given the Court's clear admonishment to not expect any further extensions,

Defendants' decision to simply disregard the deadline and take matters into their owns hands

without seeking the Court's permission to file untimely documents, cannot be considered

excusable neglect.  Accordingly, the Court should strike the Local Rule 56.1 Counter-Statement

and declaration and not consider it in deciding this motion.

**2)   The Court Should Disregard Defendants' Sham Declaration**

Defendants' entire defense to Plaintiff's minimum wage claim on this motion is hinged

on Defendant Dimitrov's statements—for the first time on summary judgment—that Plaintiff

was provided with additional cash wages in addition to the tips and house pay of $3.00 or $3.50

per hour that Defendants testified she received.  As these statements directly contradict

Defendants' earlier deposition testimony and are misrepresentations manufactured with the sole

4

intent of creating issues of fact to defeat this straightforward motion, they should be disregarded by the Court.

It is well established in this Circuit that

a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial.

*Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996), quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (internal citations omitted).

Here, Defendant Dimitrov's testified unambiguously that Plaintiff's pay was comprised of (1) $3.00 or $3.50 per hour as house pay, and (2) tips.  Defendant did not once mention any additional cash payments made to Plaintiff as wages.  Moreover, as set forth in the examples below, Defendants repeatedly testified concerning the tips and the $3.00 or $3.50 per hour house pay, and never once referred to cash supplements they now claim to have paid towards their minimum wage obligations. For example, Defendant testified as follows:

Q. I am not asking you anything about the tips, okay. My question to you is: Did Keti receive an hourly wage for every hour that she worked?

A. Look, it's you know like I have to check my books, but what I know and what everything is based off of is the bartenders they got paid three dollars an hour or 3.50 an hour plus they collect all the tips. That's what I give them. […] So when they start working we calculate three dollars per hour which is a house pay generally for the month and then they get the tips.

Dimitrov Dep. at 49:7-23[2]

Q. You as an employer have an obligation to pay your employees an hourly wage?

---

[2]  All references to deposition transcripts are references to the transcript of the November 21, 2019 deposition of Alexander Dimitrov, which is included as an exhibit to Plaintiff's original moving papers.

A. That's why I give them a house pay. The house pay is based on the three dollars per hour like whatever, 3 or 3.50. I have to ask my accountant. It is average usually like you know three, four hundred dollars a month plus the tips.

*Id*. at 50:12-18.

Q. Even though you were paying her three dollars an hour to make it easier for yourself you were just paying -- you just wrote ten dollars an hour? Even though you were paying her three dollars an hour you just wrote ten dollars an hour on the wage statement because it is easier for you?

A. Yes.

Q. But you weren't paying her ten dollars an hour, you were paying her three dollars an hour?

A. Yes.

Q. But you don't know for sure you paid her three dollars for every hour that she worked?

A. That was like mutual agreement at the beginning when I hired her. Like I told her that I am going to pay this house pay and then she's going to work for tips and all these years everybody is more than happy to work there including her.

*Id*. at 56:3-22.

This record speaks for itself.  In any event, Mr. Dimitrov's attempts to intentionally mislead the Court in his declaration are also belied by the fact that, at deposition, he consistently intimated that the $3.00 or $3.50 per hour house pay was what he thought was the equivalent of a tip credit minimum wage. Specifically, Defendant testified as follows:

Q. Do you know what the New York State minimum wage is?

A. That doesn't count for bartenders. Minimum wage is like ten or twelve dollars or 15 now but that doesn't count for bartenders. Bartenders get special calculation. 3.50 I think. Something like this.

Q. Who told you that?

A. My accountant.

Q. Did you ever consult with a lawyer before deciding to pay your employees this way?

6

A. No.

*Id*. at 52:13-24.

> Q. Let me represent to you that the New York State minimum wage was more than three dollars an hour during the entire time that she worked at Mehanata. Do you understand that?

> MR. M. NUSSBAUM: Objection to form.

> Q. Do you understand that?

> A. I said 3.50. 3.50 is what it was for the bartenders. The federal minimum wage I don't know like 7.50 or ten dollars when she start. We don't go by that because the bartenders is [sic] different pay.

*Id*. at 63:10-21.

This testimony is directly at odds with Mr. Dimitrov's declaration in which he swears, under penalty of perjury, that he always paid Plaintiff the full minimum wage.

Finally, and significantly, Defendants were explicitly warned by the Court to not engage in the precisely this practice.  Given their deliberate disregard of the Court's warnings, the Court should ignore the Dimitrov Declaration and strike it from the record. S*ee, e.g., Chiaramonte v. Animal Med. Ctr*., 2016 U.S. Dist. LEXIS 8024, at *14 n.5 (S.D.N.Y. Jan. 7, 2016) ("Plaintiff cannot raise a genuine issue of material fact by introducing an affidavit that contradicts her prior testimony.") (Failla J.) (citation omitted).[3]

---

[3] The Court should similarly disregard any attempts by Defendants' counsel to excuse or reframe Mr. Dimitrov's testimony on the basis that English is not his first language.  As an initial issue, Defendants were always free to, but did not, request an interpreter to attend Mr. Dimitrov's deposition.  This is not surprising as, when Mr. Dimtirov was asked at the outset of the deposition if he was "fluent" in English, he testified that he was "pretty decent." Dimitrov Dep. 7:12-13.  Even more significantly, per Defendants' counsel's request, Plaintiffs served a copy of the deposition transcript on Defendants for them to review and correct, if necessary. Nussbaum Decl. at 4.  Defendants never submitted any corrections to the testimony. *Id*. at 5.  Finally, in his sworn (untimely) declaration filed in opposition to this motion, Mr. Dimitrov does not claim to have misunderstood anything or been confused at his deposition.  In fact, Mr. Dimtrov's declaration is entirely in English and does not mention that anyone assisted him in drafting it or that it was translated for him prior to his execution of it.  For all the foregoing reasons, Defendants cannot have it both ways and these unfounded suggestions should be disregarded.

**B.     Plaintiff is Entitled to NYLL Liquidated Damages on her Minimum Wage Claims**

In opposing the portion of Plaintiff's motion seeking liquidated damages, Defendants betray the fact that they are unaware that the standard for awarding liquidated damages under the New York Labor Law ("NYLL") was amended more than a decade ago. (*See* Defs. Opp at 8.) Specifically, in 2009, the NYLL was amended so that the mental state required for an employer to be liable for liquidated damages was altered. *See, e.g., Xiao Dong Fu v. Red Rose Nail Salon Inc.*, 2018 U.S. Dist. LEXIS 49514, at *15-16 (S.D.N.Y. Mar. 26, 2018) (outlining the 2009 amendement to the NYLL)(Failla J.). Prior to the amendment, the NYLL required employees to prove that their employer's actions were "willful."  However, under the 2009 amendment, the burden of proof is now on the employer to prove a good faith basis for believing that its underpayment of wages was in compliance with the law. *Id*.; *see also* NYLL § 198(1-a) (permitting liquidated damages unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law").

Here, Defendants apparently did not review the straightforward cases cited by Plaintiff in her moving papers and, instead, bizarrely rely on the repealed standard.  Accordingly, as Defendants essentially ignored Plaintiff's arguments in favor of summary judgment, the Court should grant summary judgment on Plaintiff's claim for liquidated damages. *See Jackson v. Fed. Express*, 766 F.2d 189, 195–98 (2d Cir. 2014) (counseled party's response to summary judgment "arguing that summary judgment should be denied as to some claims while not mentioning others" favors granting summary judgment as to those claims left unmentioned); *see also Memory Ten, Inc. v. Silicon Mt. Holdings*, 92 F. Supp.3d 176, 188 & n.8 (S.D.N.Y. 2015) (same).

In any event, Defendants do not cite to any evidence that creates a genuine issue of fact relating to the steps they took to ensure that their payroll practices complied wit the NYLL. Specifically, Defendants only point to one fact in their defense of this issue, namely, that they "relied upon the ADP payroll company for compliance with federal and/or state law." Defs.' 56.1 at ¶ 48.  However, as set forth in Plaintiff's opening brief, where defendants "point to no advice that the accountant with whom [they] consulted gave them that would have led them to think that [] either their failure to properly were legal[,]" they have not proved the requisite good faith and cannot escape liquidated damages. *Copantitla* v. *Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253, 288 (S.D.N.Y. 2011)) (granting summary judgment for plaintiffs on issue of liquidated damages); *see also, e.g., Dudley v. Hanzon Homecare Servs*., 2018 U.S. Dist. LEXIS 8112, at *15 (S.D.N.Y. 2018) (granting summary judgment for plaintiffs on issue of liquidated damages where defendant "claim[ed] that she acted in good faith because she used a payroll service provider and believed that the provider would have notified [her] if [she] were not in compliance with the FLSA or the NYLL.") (internal quotation marks omitted); *Garcia v. JonJon Deli Grocery Corp*., 2015 U.S. Dist. LEXIS 108264, at *15-16 (S.D.N.Y. 2015) (awarding summary judgment to plaintiff on liquidated damages issue where defendants "d[id] not point to any misleading advice tendered by either the accountant or another professional that could support their claim of objectively reasonable grounds for Defendants' violations").  Given the complete absence of any evidence of advice—let alone misleading advice—proffered by Defendants in opposition to this issue, the Court should award liquidated damages.

## C. Defendants do not Oppose Plaintiff's Motion for Summary Judgment on her NYLL § 195 Notice Claims

In their opposition, Defendants do not attempt to oppose Plaintiff's arguments that she is entitled to Summary Judgment on her claims for penalties under NYLL § 195(1) and § 195(3).

9

In fact, Defendants do not mention NYLL § 195 anywhere in their opposition papers. Moreover, in their Local Rule 56.1 Counter-Statement, Defendants admit that they did not produce any notices that they provided Plaintiff pursuant to NYLL § 195 despite the fact that Plaintiff propounded requests to produce documents on Defendants. *See* Defs.' 56.1 at ¶¶ 45-47. Defendants also admit that they never provided Plaintiff with wage statements that included the correct number of hours that Plaintiff worked or the correct amount of wages that Plaintiff was paid. *Id*. at ¶¶ 36-37. The only fact that Defendants point to that relates to any wage notifications is and unsubstantiated claim in Mr. Dimitrov (discredited) declaration that the bar had posters that set forth the applicable wage rules. However, the law in this Circuit is clear that posted notices do not meet the requirements of NYLL § 195, which requires that individualized notice be provided to each employee. *See, e.g., Pineda v. Frisolino, Inc*., 2017 U.S. Dist. LEXIS 139735, at *37 n.15 (S.D.N.Y. Aug. 29, 2017) ("Although Defendants posted a notice entitled "New York Labor Law Poster" as of January 2015, those posters do not satisfy N.Y. Labor Law § 195(1), which requires individualized notices to each employee detailing their rate of pay and basis thereof."); *Salinas v. Starjem Rest. Corp*., 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015) (finding generic posters to be insufficient notice).[4]

## III.   CONCLUSION

For all the foregoing reasons, the Court should grant Plaintiff's motion in its entirety and enter partial judgment in the amounts set forth in Plaintiff's opening brief.

---

[4] The Court should in any event disregard Defendants' statements relating to posters for the following reasons: (1) They are only mentioned in the Dimitrov Declaration which, as discussed supra should be stricken from the record; (2) to the extent these documents exist, Defendants failed to turn over such documents in discovery despite the fact that they would obviously have been responsive, *see* Ps.' 56.1 at ¶¶ 45-47; and (3) Defendants do not even bother to include this information in their opposition filing thus making it impossible for the Court and Plaintiff to assess what information was allegedly included in these posters. In other words, these unsupported statements do not rise to the level of being a scintilla of evidence, let alone evidence that disputes Plaintiff's claims.

Dated: New York, New York          JOSEPH & KIRSCHENBAUM LLP
       June 19, 2020

                                        */s/ Josef Nussbaum*
                                        D. Maimon Kirschenbaum
                                        Josef Nussbaum
                                        32 Broadway, Suite 601
                                        New York, New York
                                        10004 (212) 688-5640